# UNITED STATES DISTRICT COURT

for the

_Middle_ District of _Tennessee_

United States of America
　　v.
_Russell Brothers, Jr._
Defendant

Case No. _3:13 - 00049_

## AGREEMENT TO FORFEIT REAL PROPERTY TO OBTAIN A DEFENDANT'S RELEASE

　　To obtain the defendant's release, we jointly and severally agree to forfeit the following property to the United States of America if this defendant fails to appear as required for any court proceeding or for the service of any sentence imposed as may be noticed or ordered by any court considering this matter, or fails to comply with any conditions of release set by the court _(describe property and any claim, lien, mortgage, or other encumbrance on it)_:

_Home & 5 1/4 acres located at 549 Dogwood Way, Burns, Tennessee 37209._

_Two Unsecured Promissory Notes: Held by Laurie B. Seabury in Principal amount of $38,500.00 ; and, Robin Brothers in Principal amount of $45,011.55._

　　_Ownership._ We declare under penalty of perjury that we are this property's sole owners and that it is not subject to any claim, lien, mortgage, or other encumbrance except as disclosed above. We promise not to sell, mortgage, or otherwise encumber the property, or do anything to reduce its value while this agreement is in effect. We deposit with the court the following ownership documents, including any encumbrance documents _(list all documents and submit as attachments)_:

1. _Warranty Deed_

2. _Irrevocable Trust Agreement_

　　_Surety Information._ We understand that the court and the United States of America will rely on the surety information in approving this agreement.

　　_Conditions of Release._ We state that we have either read all court-ordered conditions of release imposed on the defendant or had them explained to us.

　　_Continuing Agreement._ Unless the court orders otherwise, this agreement remains in effect during any appeal or other review until the defendant has satisfied all court notices, orders, and conditions.

　　_Exoneration of Sureties._ This agreement is satisfied and ends if the defendant is exonerated on all charges or, if convicted, the defendant reports to serve any sentence imposed.

　　_Forfeiture._ If the defendant fails to obey all conditions of release, court notices, and orders to appear, the court will immediately order the property forfeited and on motion of the United States of America may order a judgment of forfeiture against the signing parties and their representatives, jointly and severally, including interest and costs.

AO 100  (Rev. 06/09) Agreement to Forfeit Real Property to Obtain a Defendant's Release

I swear under penalty of perjury that the above information is true and agree to the conditions of this agreement.

Date: _3/18/13_

City and state: _Nashville, TN_

_____
Property owner's printed name

_Laurie B. Seabury, Trustee_
_R. Brothers, Sr., Special Grandchildrens' Irrevoc. Trust_
_____
Property owner's printed name

_____
Property owner's printed name

_____
Defendant (if a property owner)

_____
Property owner's signature

_Robin Brothers_
_____
Property owner's signature

_____
Property owner's signature

Sworn and signed before me.

Date: _____

CLERK OF COURT

_____
Signature of Clerk or Deputy Clerk

Agreement accepted.

Date: _3-18-13_

UNITED STATES OF AMERICA

_____
Assistant United States Attorney's signature

Agreement approved.

Date: _March 18, 2013_

_____
Judge's signature

# PROMISSORY NOTE

**Borrower:**    Russell Brothers, Sr. Special Grandchildren Irrevocable Trust,  (the "Borrower")

**Lender:**    Robin Brothers, (the "Lender")

**Principal amount:**    $45,011.55

1. FOR VALUE RECEIVED, The Borrower promises to pay to Robin Brothers at such address as may be provided in writing to the Borrower, the principal sum of fourty-five thousand eleven dollars and 55/100***** ($45,011.55) USD, without interest.

2. This Note will be repaid when the assets of the Trust are liquidated.

3. This Note will be construed in accordance with and governed by the laws of the State of Tennessee.

4. If any term, covenant, condition or provision of this Note is held by a court of competent jurisdiction to be invalid, void, or unenforceable, it is the parties' intent that such provision be reduced in scope by the court only to the extent deemed necessary by that court to render the provision reasonable and enforceable and the remainder of the provisions of this Note will in no way be affected, impaired or invalidated as a result.

5. All costs, expenses and expenditures including, and without limitation, the complete legal costs incurred by Robin Brothers in enforcing this Note as a result of any default by the Borrower, will be added to the principal then outstanding and will immediately be paid by the Borrower.

6. This Note will enure to the benefit of and be binding upon the respective heirs, executors, administrators, successors, and assigns of the Borrower and Lender. The Borrower waives presentment for payment, notice of non-payment, protest and notice of protest.

IN WITNESS WHEREOF the parties have duly affixed their signatures under seal on this 27th day of May, 2011.

_Laurie Brothers Seabury, Trustee_

Russell Brothers, Sr. Special Grandchildrens Irrevocable Trust
Laurie B. Seabury - Trustee
Borrower

_Robin Brothers_

Robin Brothers
Lender

# PROMISSORY NOTE

**Borrower:**    Russell Brothers, Sr. Special Grandchildren Irrevocable Trust, TN (the "Borrower")

**Lender:**    Laurie B. Seabury (the "Lender")

**Principal amount:**    $38,500.00

1.  FOR VALUE RECEIVED, The Borrower promises to pay to Robin Brothers at such address as may be provided in writing to the Borrower, the principal sum of thirty-eight thousand dollars and 00/100***** ($38,500.00) USD, without interest.

2.  This Note will be repaid when the assets of the Trust are liquidated.

3.  This Note will be construed in accordance with and governed by the laws of the State of Tennessee.

4.  If any term, covenant, condition or provision of this Note is held by a court of competent jurisdiction to be invalid, void, or unenforceable, it is the parties' intent that such provision be reduced in scope by the court only to the extent deemed necessary by that court to render the provision reasonable and enforceable and the remainder of the provisions of this Note will in no way be affected, impaired or invalidated as a result.

5.  All costs, expenses and expenditures including, and without limitation, the complete legal costs incurred by Laurie B. Seabury in enforcing this Note as a result of any default by the Borrower, will be added to the principal then outstanding and will immediately be paid by the Borrower.

6.  This Note will enure to the benefit of and be binding upon the respective heirs, executors, administrators, successors, and assigns of the Borrower and Lender. The Borrower waives presentment for payment, notice of non-payment, protest and notice of protest.

IN WITNESS WHEREOF the parties have duly affixed their signatures under seal on this 27th day of May, 2011.

*Laurie Brothers Seabury, Trustee*

Russell Brothers, Sr. Special Grandchildrens Irrevocable Trust
Laurie B. Seabury - Trustee
Borrower

*Laurie B Seabury*

Laurie B. Seabury
Lender

| WARRANTY DEED | | STATE OF TENNESSEE<br>COUNTY OF DICKSON |
|---|---|---|



THE ACTUAL CONSIDERATION OR VALUE, WHICHEVER IS
GREATER, FOR THIS TRANSFER IS $56,000.00

_Darrell B. Sterling, Trustee_
Affiant

SUBSCRIBED AND SWORN TO BEFORE ME, THIS THE 30TH
DAY OF JULY, 2010.

_Joyce Jordan_
Notary Public

MY COMMISSION EXPIRES: September 19, 2012.
(AFFIX SEAL)

### THIS INSTRUMENT WAS PREPARED BY

**American Home Title & Escrow, LLC  429 Henslee Drive  Dickson, TN 37055**
**Reviewed by Brogdon, Creasy, & Sanders, PLLC**

| ADDRESS NEW OWNER(S) AS FOLLOWS: | SEND TAX BILLS TO: | MAP-PARCEL NUMBERS |
|---|---|---|
| Laurie Seabury | SAME | 117-11.09 _OK_ |
| 115 Brookhollow Rd | | |
| (ADDRESS) | (ADDRESS) | |
| Nashville TN 37205 | | |
| (CITY) (STATE) (ZIP) | (CITY) (STATE) (ZIP) | |

FOR AND CONSIDERATION OF THE SUM OF TEN DOLLARS, CASH IN HAND PAID BY THE HEREINAFTER NAMED GRANTEES, AND OTHER GOOD AND VALUABLE CONSIDERATIONS, THE RECEIPT OF WHICH IS HEREBY ACKNOWLEDGED, I, **AMANDA G. SIMPSON, A WIDOW,** HEREINAFTER CALLED THE GRANTORS, HAVE BARGAINED AND SOLD, AND BY THESE PRESENTS DO TRANSFER AND CONVEY UNTO **LAURIE B. SEABURY, TRUSTEE OF THE RUSSELL BROTHERS SENIOR SPECIAL GRANDCHILDRENS IRREVOCABLE TRUST DATED 12-17-99** HEREINAFTER CALLED THE GRANTEE, THEIR HEIRS AND ASSIGNS, A CERTAIN TRACT OR PARCEL OF LAND IN DICKSON COUNTY, STATE OF TENNESSEE, DESCRIBED AS FOLLOWS, TO-WIT:

LYING AND BEING IN THE FOURTH CIVIL DISTRICT OF DICKSON COUNTY, TENNESSEE, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING ON A NAIL IN THE CENTERLINE OF A 50 FOOT WIDE EASEMENT AND THE SOUTHEAST CORNER OF LORENZ'S 5.42 ACRE TRACT; THENCE WITH THE EAST BOUNDARY OF LORENZ, NORTH 28° 09' 37" WEST 25 FEET TO AN IRON PIN AND ON 689.68 FEET TO AN IRON PIN REFERENCE AND ON AND ALL 733.79 FEET TO A POINT IN THE CENTERLINE OF A CREEK IN THE SOUTH BOUNDARY OF HARLESS; THENCE WITH THE SOUTH BOUNDARY OF HARLESS TO POINTS AS FOLLOWS: NORTH 54° 12' 01" EAST 135.73 FEET TO AN IRON PIN; THENCE NORTH 53° 56' 13" EAST 148.64 FEET TO AN IRON PIN, THE NORTHWEST CORNER OF MOSLEY; THENCE WITH THE WEST BOUNDARY OF MOSLEY SOUTH 35° 41' 17" EAST 790.91 FEET TO AN IRON PIN, ON IN ALL 815.92 FEET TO A NAIL IN THE CENTERLINE OF A 50 FOOT WIDE EASEMENT; THENCE WITH THE CENTERLINE OF SAID EASEMENT AND ON NAILS TO POINTS AS FOLLOWS: SOUTH 41° 11' 33" WEST 28.29 FEET; SOUTH 49° 24' 10" WEST 54.02 FEET; SOUTH 71° 03' 14" WEST 101.80 FEET; SOUTH 77° 46' 15" WEST 29.38 FEET; SOUTH 69° 14' 04" WEST 103.63 FEET; SOUTH 75° 13' 44" WEST 50.62 FEET; SOUTH 78° 54' 26" WEST 30.00 FEET TO THE POINT OF BEGINNING, CONTAINING 6.08 ACRES, MORE OR LESS, BY SURVEY OF J.S. BRENNER, R.L.S. NO. 980, DATED NOVEMBER 16, 1990.

BEING PART OF THE SAME PROPERTY CONVEYED TO AMANDA G. SIMPSON BY DEED FROM JOHNSON & SIMPSON, LLC, DATED MAY 23, 2006 OF RECORD IN VOLUME V889, PAGE 299, REGISTER'S OFFICE FOR DICKSON COUNTY, TENNESSEE.

THIS CONVEYANCE IS SUBJECT TO TAXES FOR 2010 AND SUBSEQUENT YEARS, RESTRICTIONS, AND EASEMENTS OF RECORD.

unimproved ☒

This is improved ☐  property, known as  0 DOGWOOD WAY, BURNS, TN 37029

(House Number)  (Street)  (P.O. Address)  (City or Town)  (Postal Zip)

TO HAVE AND TO HOLD the said tract or parcel of land, with the appurtenances, estate, title and interest thereto belonging to the said GRANTEES, their heirs and assigns forever; and we do covenant with the said GRANTEES that we are lawfully seized and possessed of said land in fee simple, have a good right to convey it and the same is unencumbered, unless otherwise herein set out; and we do further covenant and bind ourselves, our heirs and representatives, to warrant and forever defend the title to the said land to the said GRANTEES, their heirs and assigns, against the lawful claims of all persons whomsoever. Wherever used, the singular number shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders.

Witness my hand this 30th day of July, 2010.

_____          *Amanda G Simpson*
                                         AMANDA G. SIMPSON

_____          _____

STATE OF Tennessee

COUNTY OF Dickson

    Personally appeared before me, the undersigned, a Notary Public in and for said County and State, the within named, AMANDA G. SIMPSON, with whom I am personally acquainted and who, upon oath, acknowledged that he/she/they executed the foregoing instrument for the purposes therein contained.

    Witness my hand and official seal at Dickson, Tennessee this 30th day of July, 2010.

Commission expires:  September 19, 2012

                                         *Joyce Jordan*
                                         Joyce Jordan                    Notary Public



```
                    Jackie W. Farthing, Register
                       Dickson County Tennessee
        Rec #: 182668       Instrument #: 212405
        Rec'd:    10.00            Recorded
        State:   207.20      8/4/2010 at 8:45 AM
        Clerk:     1.00          in Volume
        Other:     2.00             V1059
        Total:   220.20         Pgs 353-354
```

# RUSSELL BROTHERS, SR.

## SPECIAL GRANDCHILDREN

## IRREVOCABLE TRUST AGREEMENT

I, Russell Brothers, Sr., of Nashville, Davidson County, Tennessee (individually sometimes referred to as "Grantor"), hereby transfer and assign to Donald L. Brothers, Betty K. Brothers and Mary Corinne Frist as Trustees, the property identified in the attached Schedule of Property. The trust property so identified, any property added to the Trust in accordance with the provisions of this instrument, and all investments and reinvestments thereof ("trust principal") shall be held upon the following terms:

## ARTICLE I

## TRUST NAME

This instrument may be designated the "Russell Brothers, Sr. Special Grandchildren Irrevocable Trust Agreement" and the initial trust hereby evidenced may be designated the "Russell Brothers, Sr. Special Grandchildren Irrevocable Trust".

## ARTICLE II

## WITHDRAWAL RIGHTS

A.    Withdrawal Right. During my lifetime, the Trustee shall distribute to each of Russell Brothers, Jr.'s ("Russell Jr.") children and each of his children's spouses, as long as they remain married to one of Russell Jr.'s children, (as defined in Article V.D.) such amounts of the net income and trust principal of the trust as that person or the lawful guardian (as defined in paragraph A of Article V of this instrument) on his or her behalf, may demand by written instrument delivered to the Trustee in accordance with the following rules and in the following order of priority:

1.    Russell Jr.'s children and spouses of Russell Jr.'s children, as long as they remain married to one of Russell Jr.'s children or their lawful guardian (sometimes referred to herein as a "Donee"), may only make a demand with respect to a contribution of Gift Property to the Trust and such demand shall not exceed whichever is less, (i) the fair market value of such contribution determined as of the date it was added to the Trust and then dividing the remainder by the number of my children living at the time of such contribution, or (ii) an amount equal to the maximum annual gift tax exclusion allowable under section 2503(b) of the Internal Revenue Code of 1986, as amended (the "Code"), based on the assumption that a valid

424743.01

consent to gift splitting is permitted under section 2513 of the Code had been made (even though it may not in fact be made) if the Donor of the Gift Property has a spouse, less the aggregate amount of Gift Property previously subject to withdrawal by that child or grandchild in that calendar year;

      2.      The right of withdrawal shall lapse in accordance with the following:

      a.      To the extent the right of withdrawal is not exercised, a right of withdrawal of a Donee shall, at the end of the notice period, as defined in subparagraph b., lapse to the extent of the lesser of (i) the value of the property then subject to the right of withdrawal or (ii) the greater of the lapse protection amounts provided in Section 2514(e) of the Code (currently the greater of Five Thousand Dollars ($5,000) or Five Percent (5%) of the fair market value of trust assets ("Lapse Protection Amount"). For this purpose, if the references to "Five Thousand Dollars ($5,000)" or "Five Percent (5%)" in Section 2514(e) or its successor are changed by amendment, the references in this Paragraph to such amount and percentage shall be correspondingly changed. Thereafter, to the extent not so previously exercised or lapsed, the right of withdrawal of a Donee shall, at the end of each calendar year, lapse to the extent the Lapse Protection Amount exceeds the amount of the current year's contribution to the trust. No right of withdrawal may be exercised as to the lapsed amount. With respect to rights of withdrawal carried over from prior years, the rights of withdrawal of a Donee shall lapse in the order in which the transfers giving rise to those rights were made, and the Lapse Protection Amount as to a right of withdrawal of a Donee shall each be appropriately reduced, according to Code Sections 2041(b)(2) and 2514(e) and the accompanying Treasury Regulations, as now or hereafter amended, for previous lapses during the same calendar year of other rights of withdrawal or similar rights or powers of that Donee.

      b.      For purposes of subparagraph a., "notice period" as to a Donee's right and power to withdraw, means the period beginning at the time of the transfer to the trust giving rise to that right and ending on whichever occurs first, (i) immediately after midnight of the date thirty (30) days after the date on which the transfer that was made to the trust, or (ii) the day preceding the date of death of that beneficiary.

      c.      In furtherance of the foregoing, if, upon the termination of any power of withdrawal granted hereunder, such power exceeded the Lapse Protection Amount provided in Section 2514(e) of the Code, such power shall continue in existence with respect to such excess, except to the extent it shall thereafter terminate as provided herein. Such power shall terminate as soon as and to the extent that such termination will not cause a lapse of such power to exceed, in such year, the Lapse Protection Amount.

Case 3:13-cr-00049  Document 12  Filed 03/18/13  Page 8 of 25 PageID #: 34

d.　　Notwithstanding subparagraphs a, b and c, to the extent that the termination of a beneficiary's power of withdrawal required by the preceding subparagraph would constitute a release of a general power of appointment under both Section 2514(e) and 2041 (b)(2) of the Code, the beneficiary shall have the power to appoint such property subject to the withdrawal right to one or more of the beneficiary's spouse, descendants or my descendants (other than such beneficiary) or to any beneficiary (other than such beneficiary) named in this instrument or to a trust for their benefit. Such power of appointment shall be exercised only by a provision in the last will of the beneficiary. Unless, within 90 days after the beneficiary's death, the trustee has actual notice of the existence of a will, the trustee shall, without incurring any liability to the appointee, proceed as if such power had not been exercised; provided, however, that this sentence shall not bar any right which an appointee may have to enforce the appointment;

Insofar as the trustee deems it advisable, distributions pursuant to this paragraph A should be made first from the trust share, if any, for such beneficiary who makes the written demand, or on whose behalf the written demand is made; however, the decision of the trustee to distribute principal from any share, if any, or the trust estate as a whole held hereunder shall be binding and conclusive on all persons.

3.　　Immediately after the original contribution of Gift Property, the Trustee shall notify in writing the beneficiaries designated in subparagraph 1, or their lawful guardians, of the existence of the withdrawal right to the extent of the withdrawal right, if any, granted under this paragraph and the value of the original contribution of Gift Property to the Trust, and, in addition, the Trustee shall give written notice to such of the beneficiaries as are living, or their lawful guardians, of the date and value of each additional contribution of Gift Property of the Trust promptly upon receipt of such contribution unless actual notice thereof already exists;

4.　　As used in this instrument, "Gift Property" means property given to the Trust which would be treated under Chapter 12 of the Code as a taxable gift of the donor or the donor's spouse (before taking into account the exclusion allowed by Section 2503(b) of the Code).

5.　　Notwithstanding the foregoing, the Donor of the Gift Property shall have the right by a written instrument filed with the Trustee when the contribution is made (i) with respect to such contribution to increase or decrease (even to zero) the amount subject to the power of withdrawal with respect to each beneficiary except the amount subject to the power shall not exceed the amount of the contribution or (ii) with respect to such contribution to change the period during which the power of withdrawal may be exercised.

6.　　It is the Grantor's intention through the provisions of this Paragraph A to qualify contributions to the trust for the federal and state gift tax

Case 3:13-cr-00049　Document 12　Filed 03/18/13　Page 9 of 25 PageID #: 35

annual exclusions and to minimize the federal and state gift tax consequences to any holder of a power of withdrawal. Grantor directs that the provision of this Paragraph A shall be construed to achieve these objectives

B.    Distribution of Trust Estate During Life of Grantor and Until Russell Jr.'s Death. During my lifetime and continuing until Russell Jr.'s death, whichever is later, the Trustee may, in its sole and absolute discretion, distribute to Russell Jr. or any one or more of Russell Jr.'s children and spouses of Russell Jr.'s children, as long as they remain married to one of Russell Jr.'s children, from time to time, as much of the net income and principal of the Trust as the Trustee may determine in its sole discretion; provided, however, that no distribution of trust principal may be made by the Trustee under this paragraph if it would impair the right of withdrawal granted under paragraph A of this Article.   No distribution of net income and/or principal shall be made to satisfy any legal or support obligation that I or any Trustee may have. The benefits of this Trust are in addition to and not in substitution for any legal or support obligation of any person. Any undistributed net income shall be accumulated and added to trust principal, as from time to time determined by the Trustee.   The beneficiary shall have no right to require that the trustee make any distribution and the trustee is expressly exonerated from all liability to the beneficiary by reason of the exercise or non-exercise of its discretionary power.

## ARTICLE III

## DISPOSITION OF TRUST ESTATE AFTER GRANTOR'S DEATH

A.    Distribution of Income and Principal.

1.    Upon Russell Jr.'s death (the "division date"), the then trust estate shall be divided into as many equal shares as Russell Jr. has children who survive him and deceased children with living descendants who survive him.   A living child's share shall be held in trust and administered in accordance with the following provision: The trustee shall distribute to such child, outright and free of trust, the entire balance of such child's share.   A deceased child's share shall be distributed to the deceased child's living descendants per stirpes subject to the provision of paragraph B of this Article.

2.    Notwithstanding anything above to the contrary:

a.    If, but for the application of this subparagraph, the death of a beneficiary either (i) would result in the imposition of generation-skipping transfer tax, or (ii) would result in such an imposition of generation skipping transfer tax upon distributions of income or principal to the primary income beneficiary subsequent to such beneficiary's death, then the Trustees shall pay out of the principal of the beneficiary's trust such amount as such beneficiary, by express reference to this power in his or her Last Will and Testament, appoints, to or among the creditors of such beneficiary's estate, up to but not in excess of the

424743.01                                              4

Case 3:13-cr-00049   Document 12   Filed 03/18/13   Page 10 of 25 PageID #: 36

amount (the "Formula Amount"), if any, above which any further addition to the amount subject to the power of appointment would increase the Net Death Taxes (as hereinafter defined) by an amount equal to or greater than the decrease in the generation-skipping transfer tax that would result from such further addition. Unless the beneficiary's Will otherwise provides by express reference to the above power of appointment, the increase in the Net Death Taxes payable by the said beneficiary's estate resulting from the inclusion of the assets subject to the general power of appointment in said beneficiary's estate shall be paid from that amount of the principal of the trust over which such power is exercisable. As used in this Paragraph, the term "Net Death Taxes" shall mean the aggregate death taxes (including, without limitation, Federal, state, local and other estate taxes and inheritance taxes but exclusive of interest and penalties), after taking into account all applicable credits and exclusions, if any, payable with respect to the estate of the beneficiary.

b. If under the Will of any other individual or individuals and/or any trust instrument or instruments, the beneficiary has one or more other general powers of appointment exercisable and measured by a formula substantially as provided in subparagraph (a) above, the amount the beneficiary may appoint under said subparagraph (a) shall be reduced proportionally, based on the net fair market values of the principal of the trusts with respect to which the powers are exercisable as of the date of death of the beneficiary, so that the aggregate of the amount so appointable hereunder and the amount or amounts so appointable pursuant to the other power or powers together shall be no greater than the Formula Amount.

B.  Deceased Child's Descendants Share. Any share or part of a share held for a descendant of a child of Russell Jr. ("Primary Beneficiary") shall be held in a separate trust and administered as follows:

1.  The Trustee, in its discretion, may pay so much of the income and principal to the Primary Beneficiary for the Primary Beneficiary's health, education, support in reasonable comfort and maintenance considering the Primary Beneficiary's other resources available to him or her and known by the Trustee.

2.  Upon the Primary Beneficiary attaining the age of Twenty-Five (25) years, the Trustee shall distribute to such Primary Beneficiary, outright and free of trust, the entire balance of such Primary Beneficiary's trust.

3.  In the event the Primary Beneficiary dies prior to the complete distribution of such Primary Beneficiary's trust, the undistributed balance of the Primary Beneficiary's trust shall be distributed to his or her then living descendants per stirpes or, in default of such descendants, to the then living descendants per stirpes of the deceased Primary Beneficiary's parent who is a descendant of mine or, if none, to my children's then living descendants per stirpes.

Case 3:13-cr-00049   Document 12   Filed 03/18/13   Page 11 of 25 PageID #: 37

# ARTICLE IV

## DISPOSITION OF TRUST ESTATE IN CERTAIN CIRCUMSTANCES

A.    <u>Trust Shares And Beneficiaries</u>.  Upon the later of mine and Russell Jr.'s deaths, and in the event Russell Jr. has no descendant's who survive him, the Trustee shall distribute the Trust estate as follows:

All of the trust assets shall be distributed equally to Russell Jr.'s living siblings and deceased siblings with living descendants with the living sibling's share distributed outright and free of trust and the deceased sibling's share divided <u>per stirpes</u> among the deceased sibling's living descendants.

# ARTICLE V

## ADMINISTRATIVE PROVISIONS

The provisions of this Article V shall apply to each trust held under this instrument:

A.    <u>Facility of Payment and Lawful Guardian</u>.  If at any time a beneficiary eligible to receive net income or principal distributions is under a legal disability, or in the opinion of the Trustee is incapable of properly managing his or her financial affairs, the Trustee may make those distributions directly to the beneficiary, to a lawful guardian of the beneficiary, or to a custodian selected by the Trustee for the beneficiary under a Uniform Transfers to Minors Act or similar applicable law, or may otherwise expend the amounts to be distributed for the benefit of the beneficiary in such manner as the Trustee considers advisable. As used throughout this instrument, the term "lawful guardian" means successively in the order named, (i) the court-appointed guardian of the estate of the beneficiary, (ii) either parent, (iii) the individual having personal custody (whether or not a court-appointed guardian) where no guardian of the estate has been appointed. Notwithstanding the foregoing, for purposes of electing to exercise the power to withdraw granted under Article II.A., under no circumstances shall the Grantor be the lawful guardian for purposes of electing to exercise the power to withdraw.

B.    <u>Spendthrift</u>.  In all circumstances, despite any provisions of law to the contrary, the interest of any beneficiary in the income or principal under this Trust shall not be grantable, transferable, subject to anticipation, to claims for alimony or support, or to involuntary transfer in any event. The Trustee shall continue to pay such income or principal, as the case may be, directly to or for such beneficiary, notwithstanding any transfer, assignment, conveyance, or action by creditors.

C.    <u>Perpetuities Saving</u>.  Notwithstanding any other provision of this instrument, on the day before the expiration of twenty-one years after the death of the last to die of myself and any beneficiary of this trust, who are living on the date of

Case 3:13-cr-00049   Document 12   Filed 03/18/13   Page 12 of 25 PageID #: 38

this instrument, the Trustee shall distribute the principal and all accrued or undistributed net income of the Trust to the beneficiary for whom a trust or share thereof is held.

D.  <u>Children and Descendants</u>.  At the time I am executing this instrument, Russell Jr. has four children, Laurie B. Seabury, Russell Brothers, III, Lynda Grace Blake and Daniel Boone Brothers.  Laurie B. Seabury is married to James C. Seabury, III.  Russell Brothers, III is married to Kim Oliver Brothers.  Lynda Grace Blake is married to Anthony Blake.  Daniel Boone Brothers is married to Dawn Woefl Brothers.  For purposes of determining who is a child or grandchild of Russell Jr. or a descendant of Russell Jr. or a child or descendant of any beneficiary of this trust:

1.  Legal adoption before the person adopted reached the age of twenty-one years shall be the equivalent in all respects to blood relationship; and

2.  A person born out of wedlock and those claiming through that person shall be deemed to be descendants (i) of the natural mother and her ancestors, and (ii) if the natural father acknowledges paternity, of the natural father and his ancestors, in each case unless a decree of adoption terminates such natural parent's parental rights.

## ARTICLE VI

## TRUSTEE POWERS

A.  <u>Powers</u>.  The Trustee shall have the following powers with respect to each trust held under this instrument, exercisable in the discretion of the Trustee:

1.  To retain for any period of time without limitation, and without liability for loss or depreciation in value, any property transferred to the Trustee, including partnership interests (whether general, special, or limited), even though the Trustee could not properly purchase the property as trust investment and though its retention might violate principles of investment diversification;

2.  To sell at public or private sale, wholly or partly for cash or on credit, contract to sell, grant or exercise options to buy, convey, transfer, exchange, or lease (for a term within or extending beyond the term of the trust) any real or personal property of the trust, and to partition, dedicate, grant easements in or over, subdivide, improve, and remodel, repair, or raze improvements on any real property of the trust, and in general to deal otherwise with the trust property in such manner, for such prices, and on such terms and conditions as any individual might do as outright owner of the property;

3.  To borrow money at interest rates then prevailing from any individual, bank, or other source, irrespective of whether any such individual or bank

is then acting as trustee, and to create security interests in the trust property by mortgage, pledge, or otherwise;

       4.     To invest in bonds, common or preferred stocks, notes, real estate mortgages, common trust funds, shares of regulated investment companies, currencies, partnership interests (whether general, special, or limited), interests as members in limited liability companies, or other securities or property, real or personal, domestic or foreign, including partial interests, such as life estate, term or remainder interests, without being limited by any statute or rule of law governing investments by trustees;

       5.     To make allocations, divisions, and distributions of trust property in cash or in kind, or partly in each; to allocate different kinds or disproportionate shares of property or undivided interests in property among the beneficiaries or separate trusts, without liability for, or obligation to make compensating adjustments by reasons of, disproportionate allocations of unrealized gain for federal income tax purposes; and to determine the value of any property so allocated, divided, or distributed;

       6.     To exercise in person or by general or limited proxy all voting and other rights, powers, and privileges and to take all steps to realize all benefits with respect to stock or other securities; and to enter into or oppose, along or with others, voting trusts, mergers, consolidations, foreclosure, liquidations, reorganizations, or other changes in the financial structure of any corporation;

       7.     To cause any security or another property to be held, without disclosure or any fiduciary relationship, in the name of the trustee, in the name of a nominee, or in unregistered form;

       8.     To compromise or abandon any claim in favor of or against the trust;

       9.     To execute instruments of any kind, including instruments containing covenants and warranties binding upon and creating a charge against the trust property and containing provisions excluding personal liability; and

       10.    To perform all other acts necessary to accomplish the proper management, investment and distribution of the trust property;

       11.    To make such elections and allocations under the tax laws as the Trustee deems advisable without regard to the relative interests of the beneficiaries; the Trustee shall not make adjustments between principal and income, or in the interests of the beneficiaries, to compensate for the effects of such elections and allocations; and any decision made by the Trustee with respect to the exercise of any tax election or allocation shall be binding and conclusive on all persons.

Case 3:13-cr-00049   Document 12   Filed 03/18/13   Page 14 of 25 PageID #: 40

12. To pay all expenses incurred in the administration of the Trust, including reasonable compensation to any Trustee, and to employ or appoint and pay reasonable compensation to accountants, depositaries, investment counsel, attorneys, attorneys-in-fact, and agents (with or without discretionary powers);

13. To deal with the fiduciary or fiduciaries of any other trust or estate, even though the Trustee is also the fiduciary or one of the fiduciaries of the other trust or estate;

14. To commingle for investment purposes the property of the Trust with the property of any other trust held hereunder or with the property of any other trust which I was the settlor and which was established by me during my life or by my will and in which I likewise authorize the Trustee of such other trust the same power to commingle trust property as I have authorized under this subparagraph, allocating to each trust an undivided interest in the commingled property.

15. To receive any property, real or personal, to be added to the Trust, from my spouse or me in any event (and, if the Trustee consents in writing, from any other person) by lifetime or testamentary transfer or otherwise;

16. To use and expand the Trust income and principal to (i) conduct or cause to be conducted environmental investigations of the trust property, including environmental audits, assessments, site monitoring, laboratory analyses, testing, title histories, aerial photographs, public and private records reviews, and any related inquiries arising out of or in any way related to liability or claims under federal, state or local environmental statutes, regulations, ordinances, requirements, demands of government authorities or policies or under common law ("environmental laws"); (ii) take appropriate remedial action to contain, clean up or remove any actual or threatened environmental hazard, including a spill, release, discharge or contamination, and conduct site restoration work on the trust property and notify the appropriate federal, state or local authorities either on its own accord or in response to an actual or threatened violation of environmental laws; (iii) institute legal proceedings, claims and demands concerning environmental hazards, contamination or condition of the trust property, or contest, pay, compromise, settle or comply with legal proceedings, claims, demands, orders, penalties, fines and damages brought or imposed by federal, state or local governmental authorities or by a private litigant; and (iv) employ agents, consultants and legal counsel to assist with or perform the above undertakings or actions. Any expenses or costs incurred by the Trustee under this subparagraph may be charged against income or principal as the Trustee shall determine; and

17. In addition, I give my Trustee power, exercisable in the discretion of my Trustee and without court order, to retain any business interest, including shares of stock or other interest in or indebtedness of any business transferred (by purchase or otherwise) to the Trust which was owned by me or trust created by me at

Case 3:13-cr-00049   Document 12   Filed 03/18/13   Page 15 of 25 PageID #: 41

the time of my death, or any other corporation or corporations succeeding to the business of that corporation(s) by consolidation, merger, purchase of assets, or otherwise, as shareholder, security holder, creditor, partner, or otherwise, for any period of time whatsoever, even though it may constitute all or a large portion of the Trust; to comply with the provisions of any agreement restricting transfer of the interest; to participate in the conduct of the related business or rely upon others to do so, and to take or delegate to others discretionary power to take any action with respect to its management and affairs which an individual could take as outright owner of the business or business interest, including the voting of stock (by separate trust or otherwise, regardless of whether that separate trust will extend for a term within or beyond the date of final distribution of the Trust) and the determination of all questions of policy; to execute and amend partnership agreements; to participate in any incorporation, reorganization, merger, consolidation, sale of assets, recapitalization, liquidation, or dissolution of the business, or any change in its nature, or to enter into any buy-sell, stock restriction, or stock redemption agreements; to invest in additional stock or securities of, or make secured, unsecured, or subordinated loans to, the business, with trust funds; to elect or employ with compensation, as directors, officers, employees, or agents of the business, any persons, without adversely affecting the compensation to which that Trustee would otherwise be entitled; to rely upon reports of accountants as to the operations and financial condition of the business, without independent investigation; and, if the business is so continued, the Trustee shall incur no liability for any loss to the Trust arising therefrom.

18. The Trustee shall have the power to enter into any type of split dollar arrangement with any other person or entity including any trust of which the Trustee is also acting as Trustee.

19. Any interest in any enterprise is deemed to be a suitable investment of the trust property of any trust established under this trust agreement, even though such interest may not be marketable, may involve a high degree of investment risk, and never yield a dividend or other income, and may constitute a substantial portion or all of the trust's property. Notwithstanding any rule of law with respect to the suitability of investments by a fiduciary or requirements of diversification of investments, the trustee of each trust established under this trust agreement is expressly authorized (but not directed) to invest and reinvest trust funds in any enterprise and to hold interests in any enterprise for an indefinite period.

20. Notwithstanding any rule of law with respect to the suitability of investments by a fiduciary or requirements of diversification of investments, the trustee of each trust established under this trust agreement is expressly authorized (but not directed) to form, or participate with others in the formation of, a new enterprise in any jurisdiction for the purpose of continuing the business or investments of any enterprise, or for the purpose of engaging in any other lawful

Case 3:13-cr-00049   Document 12   Filed 03/18/13   Page 16 of 25 PageID #: 42

business, and such trustee may invest and reinvest trust funds in any such new enterprise and may hold interests in and indebtedness of any such new enterprise for an indefinite period.

21.    The trustee of each trust established under this trust agreement is expressly authorized (but not directed) to (i) transfer, sell, or lease property to; (ii) purchase or lease property from; (iii) make further investments in; (iv) advance or lend money to, any enterprise; or (v) to enter into voting trust, buy-sell, stock restriction, stock redemption, or other similar agreements with respect to any enterprise or the interests therein or indebtedness thereof; and in general to have and exercise all of the power, authority, and discretion with respect to any enterprise and the interests in and indebtedness of such enterprise as such trustee would have if that trustee was the individual owner of the interest or indebtedness held by such trust.

22.    The trustee of each trust established under this instrument is expressly authorized and encouraged to enter into and maintain voting trust, buy-sell, stock restriction, stock redemption, or other similar agreements with respect to any enterprise or the interests therein, without regard to the impact which any such agreement may have on the value of the interests subject thereto; it being my belief that the benefits derived from maintaining a harmonious shareholder or partner group and providing a mechanism for preventing business interests from being acquired by outside and possibly adverse interests are more important than the impact that the restrictions may have on an individual shareholder or partner.

23.    Any interest in any enterprise is deemed to be a suitable investment of the trust property of any trust established under this trust agreement, even though such interest may not be marketable, may involve a high degree of investment risk, and never yield a dividend or other income, and may constitute a substantial portion or all of the trust's property. Notwithstanding any rule of law with respect to the suitability of investments by a fiduciary or requirements of diversification of investments, the trustee of each trust established under this trust agreement is expressly authorized (but not directed) to invest and reinvest trust funds in any enterprise and to hold interests in any enterprise for an indefinite period.

B.    Additional Powers Under Law.

1.    To the extent not inconsistent with the powers of and authority given to the Trustee in this instrument, I hereby grant to the Trustee and incorporate by reference the powers granted by Section 35-50-110 of the Tennessee Code Annotated, and the introductory paragraphs and all subparagraphs thereof, with the exception of subparagraphs 1 through 5.

In addition, the Trustee shall have the power to acquire and hold for investment stocks, bonds, other securities, assets, and property of any kind, liquid

Case 3:13-cr-00049   Document 12   Filed 03/18/13   Page 17 of 25 PageID #: 43

or illiquid, whether or not such investments are productive of income, and without regard to any effect the retention of such investments will have upon the diversification of investments, and to sell and dispose of such investments at any time at public or private sale, at such prices and upon such terms as the Trustee shall deem prudent. The Trustee shall be further authorized to apply for and acquire in the name of the Trust life and/or health insurance on the life of any person(s) in whom the Trust or any beneficiary has an insurable interest.

      2.    Notwithstanding anything herein contained to the contrary, the Trustee shall not have the power to use any assets of this Trust for the benefit of our (the Grantor's) estate in the manner contemplated by I.R.C.§ 2042 and/or Title 26 of the Code of Federal Regulations § 20.2042-1 (b).

      3.    The Trustee shall not be under any obligation to change the forms of investments of the Trust which are unproductive within the meaning of Section 35-6-112 of the Tennessee Code Annotated.

      4.    The powers may be exercised even after termination of all trusts hereunder until actual distribution of all trust principal, but not beyond the period permitted by any applicable rule of law relating to perpetuities.

      C.    <u>Waiver of Accounting and Bond</u>. To the extent that such requirements can legally be waived, no Trustee hereunder shall ever be required to give bond or security as Trustee, or to qualify before, be appointed by, or account to any court, or to obtain the order or approval of any court with respect to the exercise of any power or discretion granted in this instrument.

      D.    <u>Trustee Exculpation and Third Party Protection</u>. The Trustee's exercise or nonexercise of powers and discretions absent bad faith shall be conclusive on all persons. No person paying money or delivering property to any Trustee hereunder shall be required or privileged to see to its application. The certificate of the Trustee that the Trustee is acting in compliance with this instrument shall fully protect all persons dealing with a Trustee.

      E.    <u>Governing Law</u>. This instrument and all dispositions hereunder shall be governed by and interpreted in accordance with the laws of the State of Tennessee. Notwithstanding the preceding sentence, the Trustee shall have the power, in his discretion to change the situs of any trust held hereunder by written instrument signed and acknowledged by the Trustee and, in conjunction with any such change and without any need to obtain the approval of any court, to elect that such trust shall be subject to the jurisdiction of, and to move the assets of such trust to, the estate, country or place of the new situs; and, if such election shall be made, such trust shall be administered and the validity and effect of the provisions of this instrument applicable to such trust shall be determined in accordance with the laws of such jurisdiction.

Case 3:13-cr-00049   Document 12   Filed 03/18/13   Page 18 of 25 PageID #: 44

F.    Transfer to New Trust. The trustee may, in the trustee's sole discretion, distribute any part or all of the principal of the trust distributable to beneficiary(ies) hereunder to any other trust, whether now existing or hereafter created, for the benefit of the beneficiary(ies) (the "recipient trust"), even if the beneficiary(ies) is/are not the sole beneficiary(ies) of the recipient trust and the terms of the recipient trust are not identical to those of the trust held under this instrument; provided, however, that the trustee shall not exercise its discretion under this paragraph in a manner which violates any applicable rule of law relating to perpetuities.

## ARTICLE VII

### TRUSTEE AND SUCCESSOR TRUSTEE

The provisions for naming the Trustee, succession, fees and other matters are set forth below:

A.    Initial Trustees.  Any action taken by my trustees shall be based on the decision of a majority of the trustees then serving.  If for any reason any of my initial trustees designated by me in this Agreement is unable or unwilling or unavailable to serve then the remaining trustees or trustee shall serve.

B.    Successor Trustee.  If all the initial Trustees should for any reason cease to act in such capacity, the successor Trustee shall be the oldest living child of Russell Jr.  If for any reason she is unable or unwilling to serve the next oldest child of Russell Jr. shall serve.

C.    Trustee Resignation. Any Trustee may resign at any time by giving prior written notice to the persons designated in paragraph G (related to who can approve accounting).

D.    Accounting to Beneficiaries. During the term of this Trust, whenever reasonably requested but not less often than annually, the Trustee shall furnish to the persons designated in Paragraph H (related to whom can approve accountings) a statement of the receipts and disbursements, as well as a statement of the assets and the net asset value.

E.    Compensation. Any individual Trustee or advisor (as provided in paragraph ___ below) serving hereunder may receive reasonable compensation. Any successor corporate Trustee serving hereunder shall receive the fees as may be negotiated by the income beneficiaries of this Agreement, except for Russell Jr. In the event of any resignation of a Trustee, such Trustee shall not be entitled to receive any additional compensation by reason of such resignation. Further, any resigned Trustee may not require a special accounting of the trust estate to be conducted by independent auditors if any such accounting shall be waived or approved as provided in paragraph H.

F.  Removal. After my death, a majority of (i) the then adult beneficiaries eligible to receive the current income of a trust created hereunder, and (ii) the then legal or natural guardians, if any, of any beneficiaries who are under legal disability eligible to receive the current income from such trust shall have the right to remove any Trustee acting as Trustee of such trust hereunder and to name as successor Trustee any bank or trust company in the United States having capital and surplus of at least Twenty-Five Million Dollars ($25,000,000.00). Such removal and appointment shall be made by written instrument delivered to the removed Trustee which instrument shall be filed with the records of the Trustee. In the event of the removal of a Trustee, such Trustee shall not be entitled to receive any additional compensation by reason of such removal. Further, any removed Trustee may not require a special accounting of the trust estate to be conducted by independent auditors if any such accounting shall be waived or approved as provided in paragraph H.

G.  Substitute Trustee. As often as the Trustee shall deem such action to be advantageous, the Trustee may, by written instrument, resign and appoint as substitute Trustee with respect to all or any part of the trust estate, including property as to which the Trustee cannot act, any person or any bank or Trust company, within or outside of the State of Tennessee. The substitute Trustee shall have all of the title, powers and discretion of the original Trustee, but shall exercise the same under the supervision of the resigning Trustee, who shall act as adviser to the substitute Trustee. The adviser may at any time remove the substitute Trustee by written instrument delivered to the substitute Trustee. Upon the removal or resignation of the substitute Trustee, the adviser may resume the office of Trustee or may continue to act as adviser and appoint another substitute Trustee.

H.  Approval of Accounts. With respect to each trust or share thereof, the majority of the beneficiaries (or their natural or lawful guardians) who may be or are entitled to receive the current income may at any time, by written instrument, approve the accounts of the Trustee with the same effect as if the accounts had been approved by a court having jurisdiction of the trust.

I.  Limitations on Trustee. Notwithstanding any other provision of this instrument, I hereby limit the general discretionary powers of the Trustee so that (i) no Trustee shall participate in any decision regarding a discretionary distribution to that Trustee personally, except to the extent governed by and made pursuant to a standard under this instrument which constitutes an ascertainable standard within the meaning of sections 2041 and 2514 of the Code, and (ii) no Trustee may use trust income or principal to discharge the legal obligation of that Trustee individually to support and/or educate the beneficiary hereunder.

Case 3:13-cr-00049   Document 12   Filed 03/18/13   Page 20 of 25 PageID #: 46

J.  <u>Miscellaneous Matters</u>. Any Trustee named in this Will shall not be required to serve with bond. Any Trustee named in this Will shall not be required to provide an inventory or accounting to any court exercising jurisdiction over any trust created under this Will.  Tenn. Code Ann. 35-50-124, which provides for limitations of the authority of a Trustee, shall not be applicable to any trust created under this Will.

I now sign this Trust Agreement on December 17, 1998.

RUSSELL BROTHERS, SR.

424743.01

15

Witness:

STATE OF TENNESSEE          )
                            )
COUNTY OF DAVIDSON          )

Before me, _Richard A Johnson_____, a Notary Public in and for the County and State aforesaid, personally appeared Russell Brothers, Sr., the within named bargainor, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who acknowledged that he executed the within instrument for the purposes therein contained.

Witness my hand and seal at office in _Nashville, TN_____, this _17_ day of December, 1998.

_____
Notary Public

My Commission Expires:

_3-25-00_____

## SCHEDULE OF PROPERTY

      This schedule is attached to and forms a part of that certain trust agreement executed by Russell Brothers, Sr. and known as the **RUSSELL BROTHERS, SR. SPECIAL GRANDCHILDREN IRREVOCABLE TRUST** and identifies the initial property transferred to the Trustee and held subject to the trust created thereunder.

424743.01

The trusts created by the foregoing instrument are accepted as of the day and year last above written.

_____
DONALD T. BROTHERS
TRUSTEE

_____
BETTY K. BROTHERS
TRUSTEE

_____
MARY CORINNE FRIST
TRUSTEE

Witness:

STATE OF TENNESSEE          )
                            )
COUNTY OF DAVIDSON          )

Before me, _Richard A Johnson_, a Notary Public in and for the County and State aforesaid, personally appeared Donald T. Brothers, the within named bargainor, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who acknowledged that he executed the within instrument for the purposes therein contained.

Witness my hand and seal at office in _Nashville, TN_, this _17_ day of December, 1998.

_____
Notary Public

My Commission Expires:

_3-25-00_____

Case 3:13-cr-00049   Document 12   Filed 03/18/13   Page 24 of 25 PageID #: 50

Witness:

STATE OF TENNESSEE      )
                            )
COUNTY OF DAVIDSON      )

      Before me, *Richard A. Johnson*, a Notary Public in and for the County and State aforesaid, personally appeared Betty K. Brothers, the within named bargainor, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who acknowledged that she executed the within instrument for the purposes therein contained.

      Witness my hand and seal at office in *Nashville, Tn*, this *17* day of December, 1998.

                                      Notary Public

My Commission Expires:

     *3-25-00*

Witness:

STATE OF TENNESSEE      )
                            )
COUNTY OF DAVIDSON      )

      Before me, *Richard A. Johnson*, a Notary Public in and for the County and State aforesaid, personally appeared Mary Corinne Frist, the within named bargainor, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who acknowledged that she executed the within instrument for the purposes therein contained.

      Witness my hand and seal at office in *Nashville, Tn*, this *17* day of December, 1998.

                                      Notary Public

My Commission Expires:

     *3-25-00*